UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 15-      (RMC) |
| | : | |
| v. | : | UNDER SEAL |
| | : | |
| KATEERA PEEBLES, | : | VIOLATION: |
| | : | 18 U.S.C. § 286 (Conspiracy to |
| | : | Defraud the Government with |
| Defendant. | : | Respect to Claims) |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE – CONSPIRACY

### INTRODUCTION

I.   Overview Regarding Tax Matters

At all times relevant herein:

1.   The Internal Revenue Service (IRS) is an agency of the United States Department of the Treasury and is responsible for administering provisions of the Internal Revenue Code and for the collection of income taxes. The IRS maintains its headquarters at 1111 Constitution Avenue, NW, Washington, D.C.

2.   A Form 1040 Individual Income Tax Return is a tax form used by an individual to report taxable income from wages and/or from self-employment. Absent the grant of an extension, individuals who earn income in excess of certain minimums are required to file a Form 1040 Individual Income Tax Return no later than April 15th of the calendar year immediately following the tax year.

3.   A Schedule C - Net Profit From Business is used to report profit or loss from a

1

business operated as a sole proprietorship. The form supports and is attached to an individual's Form 1040. Profit or loss reflected on the Schedule C is also reported on the Form 1040. A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

4. The Earned Income Tax Credit (EITC) is a tax credit intended to help taxpayers keep more of what they earn. It is a refundable federal income tax credit for low- to moderate-income working individuals and families. Congress originally approved the tax credit legislation in 1975 in part to offset the burden of social security taxes and to provide an incentive to work. When EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit. In order to qualify, the taxpayer must meet certain requirements and file a tax return, even if the taxpayer does not owe any tax or is not required to file an income tax return.

II. <u>The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy</u>

5. At all times relevant herein, an extensive network of over 130 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $42 million in fraudulently claimed income tax refunds. During the approximate period 2006 through present (for tax years 2005 through 2013) the co-conspirators caused the filing of at least 12,000 fraudulent federal income tax returns listing one of over 430 addresses located in the District of Columbia, Maryland, and Virginia as the "taxpayer" address. Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

6. Identity theft victims whose identifying information was used on fraudulent federal

2

income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

7. The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 130 patients of a nursing home, 84 of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was stolen included: "A. W.," "C. S.," "E. G.," "F. R.," "H. H.," "J. R.," "J. J.," "J. I.," "M. W.," "M. T.," "R. E.," "R. J.," "S. B.," and "W. H." Five of these individuals, "E. G.," "H. H.," "J. R.," "J. J," and "W. H." were deceased at the time when their means of identification was used in the scheme alleged herein.

8. The tax fraud scheme involved using inflated Adjusted Gross Income by creating and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based upon the Earned Income Tax Credit. The IRS issued the income tax refunds via U.S. Treasury checks.

9. The scheme involved co-conspirators operating at various levels, each being financially compensated for his or her particular role, including:

A. Those agreeing to allow their personal identifying information to be used on one or more fraudulent federal income tax returns. If the "taxpayer" was a willing participant in the scheme who provided his or her identifying information to a co-conspirator, the "taxpayer" would accompany a co-conspirator to a check cashing service, liquor store or financial institution to negotiate the fraudulently obtained U.S. Treasury check.

B. Those permitting their residential address to be used for the delivery of

3

fraudulently obtained U.S. Treasury checks in the names of persons who did not in fact reside at the address;

    C.    Those opening a bank account or using an existing bank account for the purpose of negotiating fraudulently obtained U.S. Treasury checks issued in the names of third parties, including victims of identity theft;

    D.    Those forging the endorsement of identity theft victims on the back of fraudulently obtained U.S. Treasury checks;

    E.    Those stealing the personal identifying information of patients who were incapacitated and residing at a nursing facility, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information would be used in the scheme;

    F.    Employees of financial institutions who facilitated the negotiation of fraudulently obtained U.S. Treasury checks.

    G.    U.S. Postal Service mail carriers who facilitated the delivery to co-conspirators of fraudulently obtained U.S. Treasury checks.

    H.    Those creating and mailing to the Internal Revenue Service fraudulent federal income tax returns, Forms 1040, which contained either stolen or purchased means of identification, forged "taxpayer" signatures, and which listed as the "taxpayer's" residential address the address of a co-conspirator or associate, and falsely claimed that the "taxpayer" operated a Schedule C business claiming income sufficient to generate a tax refund based upon the EITC, and also fraudulently claimed dependents, who were not the dependents of the "taxpayer" listed on the income tax returns, resulting in the issuance of a fraudulent federal income tax refund.

4

I.  The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the fraudulently obtained U.S. Treasury checks, and did not endorse the checks or receive any of the proceeds. In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the resulting U.S. Treasury checks that were issued and never operated the business reported on the Schedule C. In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

10.  Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks mailed to their residence typically received in exchange approximately $150 per check. Those who negotiated such checks typically received in exchange approximately $250 per check. Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

11.  All of the fraudulent income tax returns sought refunds. Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia. In an apparent effort to frustrate IRS fraud detection efforts, many returns were mailed for filing to IRS Service Centers not meant to receive the returns.

12.  For the approximate period 2006 to present, the above-described scheme caused the filing of at least 12,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $42 million, and caused the issuance of fraudulent income tax refunds in the form of U.S. Treasury checks, which were delivered to various addresses located in the District of

Columbia, and elsewhere.

III.   Defendant Kateera Peebles' Role in the Scheme

13.   From in or about March 2008, and continuing until in or about July 2011, the defendant, KATEERA PEEBLES, deposited into her bank account at Navy Federal Credit Union, Account No. XXXXXX-3538, 35 (thirty-five) fraudulently obtained U.S. Treasury checks, totaling approximately $85,921.70, which were provided to her by co-conspirators A and B, and which were also obtained in the scheme detailed herein. The defendant, KATEERA PEEBLES, usually received approximately $50 to $200 per check as her portion of the proceeds for each check she deposited.

14.   In addition, from in or about September 2010, and continuing until in or about April 2013, the defendant, KATEERA PEEBLES, permitted her District of Columbia residential address to be used by co-conspirators A and B and other individuals, whose identities are known and unknown, , as the "taxpayer" address, in the preparation of approximately 60 (sixty) fraudulent U.S. individual income tax returns, Forms 1040, claiming fraudulent income tax refunds in the amount of approximately $179,166.06. Fifty-seven U.S. Treasury checks, totaling approximately $174,614.31, which were in the names of persons whom the defendant, KATEERA PEEBLES, did not know, were delivered to her residential address.

## THE CONSPIRACY

15.   From in or about March 2008, and continuing until in or about April 2013, within the District of Columbia and elsewhere, the defendant, KATEERA PEEBLES, and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully, conspire and agree together and with each other, to defraud the United States of America and an

agency thereof, that is, the Internal Revenue Service, of monies in the approximate amount of $251,832.39 through the filing of 91 (ninety-one) fraudulent federal income tax returns.

## THE GOAL OF THE CONSPIRACY

16. It was the goal of the conspiracy that the defendant, KATEERA PEEBLES, co-conspirators A and B, and other individuals whose identities are known and unknown, would enrich themselves and obtain money by negotiating U.S. Treasury checks, which were federal income tax refunds, generated by filing fraudulent U.S. federal income tax returns, the Schedule C or C-EZ Net Profit From Business, attached and in support of which, falsely claimed that each "taxpayer" operated a business as a sole proprietorship, including a "barber" or "childcare," and falsely stated that the "taxpayer" had gross receipts and two or more dependent children, when in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information or was a willing participant in the scheme; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

## MANNER AND MEANS

17. In order to further the objects and goals of the conspiracy, the defendant, KATEERA PEEBLES, co-conspirators A and B, and other individuals whose identities are known and unknown, used the following manners and means, among others:

A. The defendant, KATEERA PEEBLES, would agree to use her Navy Federal Credit Union bank account, Account No. XXXXXX-3538, to deposit fraudulently obtained U.S. Treasury checks, in the names of other individuals she did not know, which were provided to her by co-conspirators A and B.

B.  The defendant, KATEERA PEEBLES, deposited approximately 35 (thirty-five) fraudulently obtained U.S. Treasury checks, issued in the names of other persons, into her Navy Federal Credit Union bank account in order to negotiate said checks.

C.  The defendant, KATEERA PEEBLES, would then withdraw the funds and provide them to co-conspirators A and B.

D.  The defendant, KATEERA PEEBLES, would usually receive from co-conspirators A and B approximately $50 to $200 per check as her portion of the proceeds for each check she deposited.

E.  The defendant, KATEERA PEEBLES, would also agree to allow her District of Columbia residential address to be used by co-conspirators A and B and other individuals, whose identities are known and unknown, as the "taxpayer" address, in the preparation of fraudulent U.S. individual income tax returns, Forms 1040, seeking fraudulent income tax refunds.

F.  The defendant, KATEERA PEEBLES, would receive at her District of Columbia residential address, through the U.S. mail, U.S. Treasury checks, which were fraudulent income tax refunds, in the names of other individuals whom she did not know and who did not reside at her address.

G.  The defendant, KATEERA PEEBLES, would inform co-conspirators A and B when she received U.S. Treasury checks in her residential mailbox.

H.  Co-conspirators A and B would retrieve the U.S. Treasury checks from the defendant, KATEERA PEEBLES, or from her mailbox using a key that the defendant, KATEERA PEEBLES, had provided to them.

I. The defendant, KATEERA PEEBLES, would receive from co-conspirators A and B approximately $50 per check as her portion of the proceeds from the U.S. Treasury checks mailed to her residence.

J. Co-conspirators A and B would thereafter cause the retrieved checks to be negotiated.

K. Other co-conspirators, known and unknown, would receive a portion of the check proceeds.

## OVERT ACTS

18. Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, the defendant, KATEERA PEEBLES, and other individuals whose identities are known and unknown, committed the following overt acts, among others:

A. On or about July 21, 2011, a fraudulent Tax Year 2009 Form 1040, U.S. Individual Income Tax Return, and a fraudulent Schedule C, in the name of purported taxpayer "S.O.," bearing the District of Columbia address belonging to the defendant, KATEERA PEEBLES, were mailed to the IRS. On or about August 26, 2011, the IRS issued the requested refund by mailing a check in the amount of $3,283.93 to the same District of Columbia address belonging to the defendant, KATEERA PEEBLES.

B. On or about September 1, 2011, the defendant, KATEERA PEEBLES, deposited

the fraudulently obtained U.S. Treasury check described above into her Navy Federal Credit Union bank account, Account No. XXXXXX-3538, in order to negotiate said check.

(**Conspiracy to Defraud the Government with Respect to Claims**, in violation of Title 18, United States Code, Section 286)

                        RONALD C. MACHEN JR.
                        UNITED STATES ATTORNEY
                         for the District of Columbia
                        D.C. Bar No. 447889

By:     */s/ Ellen Chubin Epstein*
          ELLEN CHUBIN EPSTEIN
          Assistant U.S. Attorney
          D.C. Bar No. 442861
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 252-1773

          JEFFREY BENDER
          JESSICA MORAN
          Trial Attorneys
          Department of Justice, Tax Division
          P.A. Bar. No. 207972
          601 D. Street, N.W.
          Washington, D.C. 20530
          (202) 305-4077 (Bender)
          (202) 305-9814 (Moran)